Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MASIE WONG,<br><br>      Plaintiff,<br><br>vs.<br><br>JOUNCE THERAPEUTICS, INC., JIGAR RAYTHATHA, LUIS A. DIAZ, JR., BARBARA DUNCAN, ROBERT IANNONE, ROBERT KAMEN, PERRY KARSEN, RICHARD MURRAY, and LUISA SALTER-CID,<br><br>      Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (e) of the Securities Exchange Act of 1934<br>(2) Violation of § 14 (d) of the Securities Exchange Act of 1934<br>(3) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Masie Wong ("Plaintiff"), by and through her attorneys, alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Jounce Therapeutics, Inc. ("Jounce" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Concentra Biosciences, LLC ("Parent"), through

merger vehicle Concentra Merger Sub, Inc. ("Merger Sub" collectively with Parent, "Concentra") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 27, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, in exchange for each share of Jounce owned Jounce shareholders will receive (i) $1.85 in cash, and (ii) one Contingent Value Right ("CVR") representing the right to receive 80% of the net proceeds payable for a period of ten years post-closing from any license or disposition of Jounce's programs effected within two years of closing and 100% of the potential aggregate value of certain specified potential cost savings. As a result of the consummation of the Proposed Transaction, Jounce will become an indirect wholly-owned subsidiary of Concentra.

3.      Thereafter, on April 6, 2023, Jounce filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons. Significantly, the Recommendation Statement describes an insufficient process. For instance, pursuant to the terms of the Merger Agreement, a large portion of the merger consideration is in the form of a CVR, whose payment to Jounce stockholders is not guaranteed.

5.      Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff as a public stockholder. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board

Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Recommendation Statement with the SEC in an effort to solicit stockholders, including Plaintiff, to tender their Jounce shares in favor of the Proposed Transaction. The Recommendation Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to tender in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Jounce, provided by Jounce to the Company's financial advisors Cowen and Company, LLC ("Cowen"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Cowen and provided to the Company and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

7. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

8. Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a Jounce stockholder.

9. Defendant Jounce a clinical-stage immunotherapy company, develops therapies for the treatment of cancer. Jounce is incorporated under the laws of the State of Delaware and has its principal place of business at 780 Memorial Drive, Cambridge, MA 02139. Shares of Jounce common stock are traded on the Nasdaq Stock Exchange under the symbol "JNCE".

10. Defendant Jigar Raythatha ("Raythatha") has been a Director of the Company at all relevant times and serves as the Chairman of the Company Board.

11. Defendant Luis A. Diaz, Jr. ("Diaz") has been a Director of the Company at all relevant times.

12. Defendant Barbara Duncan ("Duncan") has been a director of the Company at all relevant times.

13. Defendant Robert Iannone ("Iannone") has been a director of the Company at all relevant times.

14. Defendant Robert Kamen ("Kamen") has been a director of the Company at all relevant times.

15. Defendant Perry Karsen ("Karsen") has been a director of the Company at all relevant times.

16. Defendant Richard Murray ("Murray") has been a director of the Company at all relevant times and serves as the Company's Chief Executive Officer ("CEO") and President.

17. Defendant Luisa Salter-Cid ("Salter-Cid") has been a director of the Company at all relevant times.

18. Defendants identified in ¶¶ 10 - 17 are collectively referred to as the "Individual Defendants."

19. Non-Party Parent is a biosciences company, of which Tang Capital Partners, LP is the controlling shareholder. Notably, Kevin Tang, a controlling investor in Tang Capital Partners, LP, also owns approximately 10% of Jounce.

20. Non-Party Merger Sub is an affiliate of Parent created to effectuate the proposed transaction.

**JURISDICTION AND VENUE**

21. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(d), 14(e), and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq Stock Exchange which is headquartered in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

24. Jounce is a clinical-stage immunotherapy company, develops therapies for the treatment of cancer. The Company develops vopratelimab, a clinical-stage monoclonal antibody, which is in Phase II clinical trial that binds to and activates the Inducible T cell CO-Stimulator, a protein on the surface of T cells found in various solid tumors.

25.     The Company is also developing JTX-8064, a monoclonal antibody that binds to leukocyte immunoglobulin like receptor B2, which is a cell surface receptor expressed on macrophages; and Pimivalimab, an anti-PD-1 antibody for combination therapy.  In addition, Jounce's preclinical products are JTX-1484, a monoclonal antibody designed to reduce myeloid-mediated immune suppression; and JTX-2134, a monoclonal antibody designed to reduce myeloid-mediated immune suppression and activate T and NK cells.

26.     The Company's most recent clinical performance press release, revealing results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid operational performance.  For example, in the November 10, 2022 press release announcing its 2022 Q3 Financials, the Company highlighted such positive R&D pipeline results as its ability to continue to advance its INNATE Phase 2 trials across multiple indications.

27.     Speaking on these positive results, Company CEO and defendant Murray stated as follows, "We have continued to execute across our pipeline of innovative immunotherapy candidates in the third quarter, especially in the Phase 2 cohorts of the INNATE study. We are proud to be sharing multiple sets of data from our discovery and development programs at two important immuno-oncology conferences this year."

28.     These positive clinical results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Jounce.  Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

29.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Jounce to enter into the Proposed Transaction without providing requisite information to Jounce stockholders such as Plaintiff.

*The Flawed Sales Process*

30. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible. Moreover, the Recommendation is materially deficient in the information it fails to provide.

31. First and foremost the Recommendation Statement fails to adequately disclose why the Board agreed to a portion of the merger consideration to be composed of a CVR, whose payout to public stockholders of the Company such as Plaintiff is not a certainty.

32. Moreover, the Company has failed to provide adequate information to enable public Company stockholders such as Plaintiff to properly evaluate the expected consideration associated with the CVR, making it all but impossible to properly evaluate whether one should tender their shares.

33. The Recommendation Statement fails to adequately disclose of the extent of powers of the "Transaction Committee" in evaluating the Proposed Transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interest of common shareholders.

34. In addition, the Recommendation Statement is silent as to the nature of the confidentiality agreements entered into between the Company and potentially interested third parties, including Concentra, throughout the sales process, if any, and whether these agreements differ from each other, and if so in what way.

35. The Recommendation Statement also fails to disclose all specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into

- 7 -
COMPLAINT

between the Company and any potentially interested third parties, including Concentra, throughout the sales process, if any, would fall away.

36. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

37. On March 27, 2023, Jounce issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **CAMBRIDGE, Mass., March 27, 2023 –** Jounce Therapeutics, Inc. (NASDAQ: JNCE) ("Jounce" or the "Company"), a clinical-stage company focused on the discovery and development of novel cancer immunotherapies and predictive biomarkers, today announced it has entered into a definitive merger agreement whereby Concentra Biosciences, LLC ("Concentra") will acquire Jounce for $1.85 in cash per share plus a non-tradeable contingent value right (the "CVR").
>
> The $1.85 per share upfront consideration represents a premium of approximately 75% to Jounce's closing share price immediately prior to the March 14, 2023, public disclosure of Concentra's acquisition proposal.
>
> Following a thorough review process conducted with the assistance of its legal and financial advisors, Jounce's Board of Directors has determined that the acquisition by Concentra – of which Tang Capital Partners, LP is the controlling shareholder – is in the best interests of all Jounce shareholders, and has unanimously approved the merger agreement.
>
> Jounce's Board of Directors is no longer recommending the proposed all-share merger transaction (the "Redx Business Combination") with Redx Pharma Plc (AIM:REDX) ("Redx"). The Jounce Board of Directors has notified Redx of the withdrawal of its recommendation in favor of the Redx Business Combination and termination of the co-operation agreement dated February 23, 2023 between Jounce and Redx.
>
> In conjunction with the merger agreement, Jounce is implementing a workforce reduction of approximately 84% of its employees. This reduction is expected to be completed within the next month and Jounce will incur restructuring costs totaling approximately $6.5 million1. The remaining Jounce employees will work to complete the sale of the Company, conduct activities to maximize the value of the CVR, work to ensure that patients on the SELECT and INNATE trials have the opportunity to continue receiving therapy with vopratelimab, JTX-8064 and pimivalimab and to otherwise ensure a smooth transition to Concentra.

Pursuant and subject to the terms of the merger agreement, a subsidiary of Concentra will commence a tender offer by April 7, 2023 to acquire all outstanding shares of Jounce for $1.85 in cash per share at closing plus a non-tradeable CVR representing the right to receive 80% of the net proceeds payable for a period of ten years post-closing from any license or disposition of Jounce's programs effected within two years of closing and 100% of the potential aggregate value of certain specified potential cost savings.

Closing of the tender offer is subject to certain conditions, including the tender of Jounce shares representing at least a majority of the total number of outstanding shares as of immediately following the consummation of the offer; the availability of at least $110 million of cash and cash equivalents, net of any tail and closing costs, at closing, and other customary conditions. The acquisition is expected to close in the second quarter of 2023.

*Potential Conflicts of Interest*

38. The breakdown of the benefits of the deal indicates that Jounce insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Jounce.

39. Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as follows:

| Name of Executive Officer or Director (including former executive officers) | Number of Shares (#) | Cash Consideration for Shares ($) |
|---|---|---|
| Luis Diaz | - | - |
| Barbara Duncan | - | - |
| Robert Kamen | 94,580 | 174,973 |
| Perry Karsen | 5,000 | 9,250 |
| Jigar Raythatha | - | - |
| Luisa Salter-Cid | - | - |
| Robert Iannone | - | - |
| Hugh Cole | 95,673 | 176,995 |

| | | |
|---|---:|---:|
| Kim Drapkin | 52,967 | 97,989 |
| Richard Murray | 142,173 | 263,020 |
| Elizabeth Trehu | 77,666 | 143,682 |

40. Additionally, the Recommendation Statement fails to account for accounting of all stockholders who own more than 5% of the Company's outstanding stock, despite at least one such holder – an affiliate of Concentra – existing.

41. In addition, Company insiders, currently own large, illiquid portions of stock options, restricted share, or other equity award, which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

| Name of Executive Officer or Director (including former executive officers) | Number of Shares Subject to Vested Stock Options (#) | Cash Consideration for Vested Stock Options ($) | Number of Shares Subject to Unvested Stock Options (#) | Cash Consideration for Unvested Stock Options ($) | Total Cash Consideration for Stock Options in Merger ($) |
|---|---|---|---|---|---|
| Luis Diaz | 99,363 | - | 5,000 | - | - |
| Barbara Duncan | 120,761 | - | 5,000 | - | - |
| Robert Kamen | 86,490 | - | 5,000 | - | - |
| Perry Karsen | 167,790 | - | 5,000 | - | - |
| Jigar Raythatha | 30,700 | - | 20,700 | - | - |
| Luisa Salter-Cid | 43,783 | - | 15,467 | - | - |
| Robert Iannone | 69,950 | - | 5,000 | - | - |
| Hugh Cole | 415,450 | - | 117,950 | - | - |
| Kim Drapkin | 509,420 | - | 76,850 | - | - |
| Richard Murray | 1,632,016 | 911,282 | 251,253 | - | 911,282 |
| Elizabeth Trehu | 445,445 | - | 74,625 | | |

| Name of Executive Officer or Director (including former executive officers) | Number of Jounce RSUs (#) | Cash Consideration for RSUs ($) |
|---|---|---|
| Luis Diaz | - | - |
| Barbara Duncan | - | - |
| Robert Kamen | - | - |
| Perry Karsen | - | - |
| Jigar Raythatha | - | - |
| Luisa Salter-Cid | - | - |
| Robert Iannone | - | - |

| | | |
|---|---:|---:|
| Hugh Cole | - | - |
| Kim Drapkin | 25,751 | 47,639 |
| Richard Murray | 85,834 | 158,793 |
| Elizabeth Trehu | 25,751 | 47,639 |

42.     In addition, certain employment agreements with certain Jounce executives, entitle such executives to significant amounts of money conditioned upon the consummation of the merger and/or their termination. These 'golden parachute' packages are significant and will grant each director or officer entitled to them significant sums of money, compensation not shared by Plaintiff, as follows:

| Name of Executive Officer (including former executive officers) | Cash ($)(1) | Equity ($)(2) | COBRA/Insurance Benefits($)(3) | Total ($) |
|---|---:|---:|---:|---:|
| Hugh Cole | 783,750 | - | 21,341 | 805,091 |
| Richard Murray | 1,395,000 | 158,793 | 32,011 | 1,585,804 |
| Elizbeth Trehu | 913,330 | 47,639 | 14,913 | 975,882 |

43.     The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.     Thus, while the Proposed Transaction is not in the best interests of Jounce, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Recommendation Statement*

45. On April 6, 2023, the Jounce Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide Plaintiff in her capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

46. Specifically, the Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

   a. Adequate disclosure of the extent of powers of the "Transaction Committee" in evaluating the Proposed Transaction, including whether the Transaction Committee was empowered to veto a potential transaction not in the best interest of common shareholders;

   b. Adequate disclosure as to why the Board agreed to uncertain consideration through a CVR rather than more definite consideration;

   c. Adequate disclosure regarding the specific consideration the CVR represents;

   d. Whether the terms of any confidentiality agreements entered during the sales process between Jounce on the one hand, and any other third party (including Concentra), if any, on the other hand, differed from one another, and if so, in what way;

e.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties (including Concentra) throughout the sales process, if any, would fall away; and

f.  The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Jounce's Financial Projections*

47. The Recommendation Statement fails to provide material information concerning financial projections for Jounce provided by Jounce management and relied upon by Cowen in its analyses.

48. The Recommendation Statement, therefore, should have, but fails to provide, certain information in the projections that Jounce management provided to the Board and Centerview.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

49. Notably, the Recommendation Statement fails to disclose any projection information whatsoever.

50. This information is necessary to provide Plaintiff in her capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Recommendation Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Cowen's financial analyses, or make an informed decision whether to tender her shares in favor of the Proposed Transaction. As such, the Board is in violation of the Exchange Act by failing to include such information in the Recommendation Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cowen*

52. In the Recommendation Statement, references are made to Cowen serving as the Company's financial advisor, however the Recommendation Statement indicates that Cowen did not provide a fairness opinion for the Proposed Transaction.

53. It furthermore does not appear that the Board solicited any other fairness opinion to support the Proposed Transaction, nor does the Board provide adequate information as to why such a basic component of the sales process was foregone.

54. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender her shares in favor of the Proposed Transaction.

55. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes her value and serves her interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

### Violations of Section 14(e) of the Exchange Act

### **(Against All Defendants)**

56. Plaintiff repeats all previous allegations as if set forth in full herein.

57. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

58. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.].

59. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

60. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

61. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

62. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender

COMPLAINT

its shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

63. Plaintiff has no adequate remedy at law.

## SECOND COUNT

## Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

## (Against all Defendants)

64. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

65. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

66. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

67. SEC Rule 14d-9 requires a Company's directors to, furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

68. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

69. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to decide whether to tender her shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

70. Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

71. Plaintiff repeats all previous allegations as if set forth in full herein.

72. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in her capacity as a Company stockholder.

73. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

74. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Jounce's business, the information contained in its filings with the SEC, and its

public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

75. The Individual Defendants acted as controlling persons of Jounce within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Jounce to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Jounce and all of its employees. As alleged above, Jounce is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 11, 2023					**BRODSKY & SMITH**

					By: *Evan J. Smith*
					Evan J. Smith
					240 Mineola Boulevard
					Mineola, NY  11501
					Phone:  (516) 741-4977
					Facsimile (561) 741-0626

					*Counsel for Plaintiff*